IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HILLWOOD DEVELOPMENT COMPANY, L.L.C., ANLAND GP, L.P., ANLAND HOLDINGS, INC., ANLAND 16, L.P., ANLAND 2A, L.P., VICTORY INTANGIBLES, L.P., ANLAND SOUTH, L.P., ANLAND SOUTH COMMERCIAL, L.P., ANLAND NORTH, L.P., ANLAND NORTH II, L.P., ANLAND NORTH COMMERCIAL, L.P., VICTORY PLAZA BUILDINGS, L.P., ANLAND 10, L.P., and ANLAND 14, L.P., | § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:04-CV-1100-L |
| THE RELATED COMPANIES, INC., and RELATED URBAN DEVELOPMENT, L.L.C. f/k/a THE PALLADIUM COMPANY, L.L.C., | § § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(1), [Fed. R. Civ. P.] 12(b)(6), and 28 U.S.C. § 2201, filed under seal on September 3, 2004. Upon consideration of the motion, the response, the reply, the record, and applicable law, the court **grants** Defendants' Motion to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(1) and 28 U.S.C. § 2201, and **declines to address** Defendants' Motion to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(6).

**I.    Procedural and Factual Background**

Plaintiffs Hillwood Development Company L.L.C.("Hillwood"); Anland GP L.P.; Anland Holdings, Inc.; Anland 16, L.P.; Anland 2A, L.P.; Victory Intangibles, L.P.; Anland South L.P.;

**Memorandum Opinion and Order - Page 1**

Anland South Commercial, L.P.; Anland North, L.P.; Anland North II, L.P.; Anland North Commercial, L.P.; Victory Plaza Buildings, L.P.; Anland 10, L.P.; and Anland 14, L.P. (collectively referred to as "Plaintiffs") brought this action against Defendants The Related Companies, Inc. ("Related") and Related Urban Development, L.L.C. f/k/a The Palladium Company, L.L.C. ("Related Urban") (collectively referred to as "Defendants") on May 21, 2004. Plaintiffs are Texas business entities with principal places of business at the same Dallas, Texas location. Related is a Delaware corporation with its principal place of business in New York, New York. Related Urban is a New York business entity sharing its principal place of business with Related, and upon Plaintiffs' information and belief, is a wholly-owned subsidiary and/or affiliate of Related.

On February 8, 2002, Anland GP No. 1, L.P. and Anland G.P. No. 2, L.P., on behalf of Hillwood and certain partnerships its controls, and Related Urban executed a Letter of Intent regarding the potential joint development of the Victory Project, a real estate development in the vicinity of the American Airlines Center, near downtown Dallas, Texas. The purpose of the Letter of Intent was to provide the parties a way to discuss and evaluate a plan for developing the Victory Project, and to negotiate and structure a potential definitive agreement without entering into a binding contract. It provided that the parties had from February 8, 2002, the execution date, until September 30, 2002 (the "Exclusivity Period") to "enter into a mutually acceptable definitive written agreement, expressly replacing this letter, regarding their joint development of the Project . . . ." Pls' First Am. Compl. ¶ 26. If the parties did not enter into such written agreement during the Exclusivity Period:

> (a) this letter shall terminate and no longer be in force and effect . . . ; (b) [the parties] shall have no rights or obligations under this letter except as otherwise expressly provided [in Paragraphs 3, 8, and 9, which shall survive such termination];

>and (c) Palladium (and its affiliates) shall have no rights or interests of any nature in the Site, the Project, or the work product created during the Exclusivity Period.

Pls' First Am. Compl. ¶ 26.[1] According to Plaintiffs, at the end of the Exclusivity Period, the parties had not reached an agreement, extended the Exclusivity Period, or reached any other agreement providing Defendants any rights regarding the Victory Project or participation in its development.

On December 2, 2003, Kenneth Himmel ("Himmel"), President and Chief Executive Officer of Related Urban sent a letter to Ross Perot, Jr. ("Perot"), Chairman of Hillwood, regarding Defendants' continued involvement in the Victory Project. Perot responded by letter on December 26, 2003, stating "Related, by its choice, ended its role at Victory . . . . If you have any interest in getting back into Victory, we would be pleased to visit with you . . . ." Pls' App. 25; *see* Pls' First Am. Compl. ¶ 28. On March 31, 2004, an unidentified representative of Related e-mailed Perot, stating, in part:

>Excluding us from Victory is inconsistent with our agreement. You and I need to reach an amicable solution to us being excluded from Victory in the form of payment to us of monies or other considerations for our time and investment.

Pls' App. 26; *see* Pls' First Am. Compl. ¶ 29. On April 2, 2004, Perot e-mailed Steven Ross ("Ross"), Chairman and Chief Executive Officer of Related, stating "Related abandoned its position nearly eighteen (18) months ago . . . . [W]e would be pleased to discuss with you any interest you might have in getting back into Victory on a new mutually beneficial arrangement." Pls' App. 27; *see* Pls' First Am. Compl. ¶ 30.

Perot met with Defendants' representatives in New York in late April 2004, and informed them that they should contact Jonas Woods ("Woods"), an employee of Hillwood, to discuss any

---

[1]Paragraph 3 states that predevelopment expenses incurred by the parties will be shared as provided under a document titled "Predevelopment Expenses." Pls' App. in Supp. of Resp. to Defs' Mot. to Dismiss (Pls' App.) 8. Paragraph 8 contains a confidentiality provision, and Paragraph 9 contains a non-compete provision. *Id*. at 9.

**Memorandum Opinion and Order - Page 3**

claimed further involvement in the Victory Project. Thereafter, a representative of Defendants contacted Woods, who stated that Defendants had no existing involvement in the Victory Project, and that any future role Defendants might have would not be based upon any previous involvement. Shortly thereafter, Ross advised Plaintiffs that discussions on the matter were over. On May 19, 2004, Ross sent Perot a letter, stating, in part:

> Jonas [Woods] advised us you do not believe Related's investment and work entitles us to any rights or interest in Victory, whatsoever. Unfortunately, your position ignores an amicable resolution of our rights, which leaves me no alternative but to pursue other avenues to enforce my rights.

Pls' App. 28; *see* Pls' First Am. Compl. ¶ 32. Based upon Ross's letter and failed negotiations, Plaintiffs believed that Defendants intended to sue immediately.

Two days later, on May 21, 2004, Plaintiffs filed this declaratory action against Defendants pursuant to both 28 U.S.C. § 2201 and Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.*, and also asserted a claim for attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 37.009. *See* Pls' Orig. Compl. ¶¶ 32-40. Plaintiffs requested the court to enter a declaratory judgment construing the rights and obligations, if any, the parties have under the Letter of Intent. On September 3, 2004, Defendants filed their Motion to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(1), [Fed. R. Civ. P.] 12(b)(6), and 28 U.S.C. § 2201, requesting the court to dismiss Plaintiffs' claims based upon a lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, or pursuant to the court's discretion to decline hearing a declaratory action. On September 20, 2004, the clerk of the court received Plaintiffs' Response, Appendix in Support of the Response, and First Amended Complaint.[2] In the First Amended Complaint, Plaintiffs' live pleading, Plaintiffs do not assert a

---

[2]On April 10, 2006, the court ordered Plaintiffs to provide it with an original and copy of (1) Plaintiffs' Response to Defendants' Motion to Dismiss; (2) Appendix in Support of Plaintiffs' Response; and (3) Plaintiffs' First Amended Complaint. Plaintiffs complied with the order on April 12, 2006. The clerk of court previously file-stamped

**Memorandum Opinion and Order - Page 4**

declaratory action pursuant to the Texas Declaratory Judgment Act (the "Texas DJA"), or a claim for attorney's fees under the Texas DJA.[3] Plaintiffs, pursuant to 28 U.S.C. § 2201, *et seq*, request the court to declare that:

    a.    No mutually acceptable written agreement regarding the joint development of the Project was entered by the parties by September 30, 2002;

    b.    The Letter's Exclusivity Period expired on September 30, 2002;

    c.    The Letter terminated and is no longer in force and effect because the Exclusivity Period has expired;

    d.    [Defendants have] no rights or interest of any nature in the site, the Victory Project, or the work product created during the Exclusivity Period;

    e.    [Plaintiffs and Defendants] have no rights or obligations under the Letter except those expressly provided in Paragraphs 3, 8, and 9;

    f.    No other contract or agreement between the parties exists regarding the proposed joint development of the Victory Project, including any express or implied contract for [Defendants'] continued involvement with the Victory project not addressed by the terms of the Letter; and

    g.    [Plaintiffs have] not breached and [are] not in breach of the Letter.

Pls' First Am. Compl. ¶ 39.

---

these three documents as "received" on September 20, 2004. The documents should have been "filed" on September 20, 2004. Apparently, the clerk's office believed that leave was necessary for filing the First Amended Complaint; however, since no responsive pleading was filed to Plaintiff's Original Complaint, no leave of court was required under Fed. R. Civ. P. 15(a). The court **directs** the clerk of court to file-stamp the following documents as "filed" on September 20, 2004: (1) Plaintiffs' Response to Defendants' Motion to Dismiss; (2) Appendix in Support of Plaintiffs' Response; and (3) Plaintiffs' First Amended Complaint. The documents **shall** be filed under seal and shall remain under seal until further order of this court.

[3]Plaintiffs have withdrawn their declaratory judgment action pursuant to the Texas DJA. Plaintiffs have also withdrawn their claim for attorney's fees under the Texas DJA, and rightfully so, as the Texas DJA is procedural, not substantive, and thus cannot serve as a basis for an award of attorney's fees in this diversity action. *Camacho v. Texas Workforce Comm'n*, ___ F.3d ___, No. 05-50711, 2006 WL 804086, at *1 (5th Cir. Mar. 30, 2006); *Olander v. Compass Bank*, 363 F.3d 560, 567-68 (5th Cir. 2004); *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Accordingly, Plaintiffs' only remaining claim is a declaratory action brought pursuant to 28 U.S.C. § 2201, *et seq*.

**Memorandum Opinion and Order - Page 5**

Plaintiffs assert that the rights and obligations for both parties set forth in the Letter of Intent have terminated, except for those expressly provided for in Paragraphs 3, 8, and 9. According to Plaintiffs, despite this termination, Defendants: (1) contend that Plaintiffs owe them obligations under the Letter of Intent; (2) demand compensation if they are, in fact, excluded from the Victory Project; and (3) have threatened litigation over the matter. Defendants filed their Reply on October 7, 2004, reurging, among other things, that the court lacks subject matter jurisdiction over Plaintiffs' declaratory action because there is no "actual controversy," as the statement in Ross's letter is not a specific and concrete threat of litigation.

## II.    Motion to Dismiss - 12(b)(1) Lack of Subject Matter Jurisdiction

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. *See* Fed. R. Civ. P. 12(b)(1). A claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Thus, a federal court must dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424

**Memorandum Opinion and Order - Page 6**

(5th Cir.), *cert. denied*, 122 S. Ct. 1059 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations in the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### III.    Framework for Examining Plaintiffs' Declaratory Action

The Declaratory Judgment Act (the "Act") provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). In analyzing whether to decide or dismiss a declaratory judgment action, the district court engages in a three-step inquiry, and must determine: (1) whether the declaratory action is justiciable, a threshold issue; (2) if it has jurisdiction, whether the court has the authority to grant declaratory relief in the present action; and (3) if it has jurisdiction and authority, whether to exercise its broad discretion to decide or dismiss the action. *The Sherwin Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003); *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Under the three-step inquiry, the court need not reach the second or third steps unless the action is ripe for adjudication, and therefore justiciable. *Shields v. Norton*, 289 F.3d 832, 837 (5th Cir.) ("[W]e must not proceed until the issue is ripe - until we have that case or controversy."), *cert. denied*, 537 U.S. 1071 (2002); *Orix Credit Alliance, Inc.*, 212 F.3d at 895.

### IV.    Analysis

**Memorandum Opinion and Order - Page 7**

A. **An Actual Controversy Must Exist for a Declaratory Action to be Justiciable and Therefore Ripe for Adjudication.**

The court first considers whether Plaintiffs' declaratory action is justiciable. Defendants contend that the court should dismiss the declaratory action for a lack of subject matter jurisdiction because Plaintiffs have not established that Defendants made a specific and concrete threat of litigation, and therefore no actual controversy exists for the court to adjudicate. Plaintiffs counter, arguing that Defendants threatened litigation over their perceived interest in the Victory Project, and that Plaintiffs had a reasonable fear of such litigation.

The Declaratory Judgment Act requires an "actual controversy" between the parties before a federal court may exercise its jurisdiction. 28 U.S.C. § 2201(a); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). A declaratory judgment action, like any other action, must be ripe in order to be justiciable, and such action is ripe for adjudication only where an "actual controversy" exists. *Shields*, 289 F.3d at 835.[4] A court should dismiss a case for lack of "ripeness" when "the case is abstract or hypothetical." *Orix Credit Alliance, Inc.*, 212 F.3d at 895.[5] An actual controversy arises when "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Group Specialty, Inc. v. Matthew/Muniot Family, L.L.C.*, 322 F.3d 835, 838 (5th Cir. 2003). The declaratory plaintiff bears the burden of proving, by a preponderance of the evidence, that an actual controversy exists. *Cardinal Chem. Co. v. Morton*

---

[4]"[T]he case or controversy requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act." *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990). A district court lacks subject matter jurisdiction to issue a declaratory action pursuant to 28 U.S.C. § 2201 unless an actual controversy exists. *Id.*; *cf. Orix Credit Alliance, Inc.*, 212 F.3d at 895.

[5]Key "ripeness" considerations are: "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Orix Credit Alliance, Inc.*, 212 F.3d at 895 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A case "is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987)).

**Memorandum Opinion and Order - Page 8**

*Int'l*, *Inc.*, 508 U.S. 83, 95 (1993); *West Publ'g Co.*, 882 F.2d at 175. Whether particular facts "are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit Alliance*, *Inc.*, 212 F.3d at 896 (citations omitted).

The parties dispute whether Plaintiffs have presented a threat of litigation sufficiently creating an actual controversy concerning the rights and obligations, if any, the parties have under the Letter of Intent. A "threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Id.* at 897 (citations omitted); *see Shields*, 289 F.3d at 835; *Steelplan*, *Ltd. v. Steel Plan Australia Pty.*, *Ltd.*, No. 3:02-CV-470-P, 2003 WL 21499303, at *4 (N.D. Tex. June 25, 2003) (Solis, J.).[6] In other words, if a threat of litigation is specific and concrete, such threat is sufficiently immediate and real to constitute a justiciable controversy that is ripe for adjudication. *Cf. Orix Credit Alliance*, *Inc.*, 212 F.3d at 896; *see Steelplan*, *Ltd.*, 2003 WL 21499303, at *4; *Intralox*, *L.L.C. v. Habasit Belting*, *Inc.*, No. Civ. A. 04-840, 2004 WL 1497713, at *3 (E.D. La. July 2, 2004). In determining whether a specific and concrete threat of litigation exists, courts "look to the practical likelihood that a controversy will become real." *Shields* , 289 F.3d at 835. The controversy "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional, or based upon the possibility

---

[6] While Plaintiffs acknowledge that a specific and concrete threat of litigation can establish an actual controversy, they contend that they may establish an actual controversy merely by showing that they had a reasonable fear of litigation. *See* Pls' Response at 5 (citing *West Publ'g* Co., 882 F.2d at 176). The court disagrees. *West Publishing Company* states that an actual controversy exists "*in an intellectual property case* . . . (1) when the declaratory plaintiff has a real and reasonable apprehension of litigation and (2) when the declaratory plaintiff has engaged in a course of conduct that brings it into adversary conflict with the declaratory defendant." *West Publ'g Co.*, 882 F.2d at 175 (citations omitted) (emphasis added); *see also Orix*, 212 F.3d at 897. While courts may apply a "reasonable fear of litigation" analysis to declaratory actions pertaining to intellectual property matters, the controlling inquiry for this action, which does not concern intellectual property, is whether the threat of litigation is "specific and concrete." *Compare West Publ'g Co.*, 882 F.2d at 175 ("While the basic declaratory judgment principles are well settled, we have not had the opportunity to apply them in the context of an intellectual property case."), *with Orix Credit Alliance*, *Inc.*, 212 F.3d at 897 ("The threat of litigation, if specific and concrete, can indeed establish [an actual] controversy . . . .") (citation omitted), *and Shields*, 289 F.3d at 835 ("The threat of litigation can establish a justiciable controversy if it is specific and concrete.").

**Memorandum Opinion and Order - Page 9**

of a factual situation that may never develop." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown v. Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)). Likewise, courts examine whether the threatened dispute has "taken on final shape so that the court can see what legal issues it is deciding." *Orix Credit Alliance, Inc.*, 212 F.3d at 898 (quoting *El Paso Building & Const. Trades Council v. El Paso Chapter Assoc. Gen. Contractors of Am.*, 376 F.2d 797, 800 (5th Cir. 1967)). Some conflicts involve "saber rattling, but nothing more," and therefore are insufficiently mature to warrant the court's intervention. *Shields*, 289 F.3d at 837; *see Intralox, L.L.C.*, 2004 WL 1497713, at *4.

> **B.  Plaintiffs' Declaratory Action is not Justiciable, and Therefore not Ripe for Adjudication, Because no Actual Controversy Exists.**

The court now examines Ross's May 19, 2004 letter to Perot to determine whether, in light of controlling authority, it contains a threat of litigation sufficiently specific and concrete to render Plaintiffs' declaratory action an actual controversy and thus ripe for judicial intervention. Plaintiffs contend that Ross's letter provided notice of intention to sue, excluded further negotiation, and was sent only after Defendants submitted two previous correspondences to Perot inviting negotiation. Perot, in his affidavit, avers that he "understood [the letter] to be a clear threat of litigation . . . and believed that Related was immediately going to initiate litigation." Pls' App. 23. Accordingly, Plaintiffs contend that the statement in Ross's letter raises an actual controversy concerning the parties' rights and obligations, if any, under the Letter of Intent.

Defendants counter that the statement in Ross's letter is not a specific and concrete threat of litigation. The court agrees. Even when the court assumes all factual allegations in the First Amended Complaint as true, Plaintiffs have not demonstrated, by a preponderance of the evidence, *see West Publ'g* Co., 882 F.2d at 175, that Ross's letter contains a specific and concrete threat of

**Memorandum Opinion and Order - Page 10**

litigation, or otherwise alleged facts showing that "a substantial controversy of sufficient immediacy and reality exists" between the parties.

The court now turns to Ross's letter. The letter is addressed to Ross Perot, Jr., Chairman of Hillwood; states "your position ignores an amicable resolution of our rights"; does not appear to invite further negotiation; and is dated May 19, 2004, two days before Plaintiffs filed this declaratory action. Further, the court observes that Ross submitted the letter after Himmel's December 2, 2003 letter inviting negotiation, and after the March 31, 2004 e-mail stating, "excluding us from Victory is inconsistent with our agreement. You and I need to reach an amicable solution to us being excluded from Victory in the form of payment to us of monies or other considerations for our time and investment." Pls' App. 24, 26; Pls' First Am. Compl. ¶¶ 28-29. Nowhere in Ross's letter, however, does he explicitly threaten the filing of a civil lawsuit. Although it is not sufficiently specific and concrete, Ross's statement that he has "no alternative but to pursue other avenues to enforce my rights" is the only thing in the letter that marginally approximates the requisite standard. Pls' App. 28; Pls' First Am. Compl. ¶ 32.[7] The letter also does not reference specific causes of action Related and/or Related Urban may, or will, file against Plaintiffs; nor does it indicate when, if at all, such causes of action might be filed. Moreover, although Ross states that Related spent "over $9 million" in predevelopment costs for the Victory Project, he does not assert that Hillwood, or any of the Plaintiffs, owe Related and/or Related Urban a specific dollar amount in damages. Pls' App. 28.

---

[7]The words, "other avenues," show the inherent lack of specificity in Ross's statement, as, apparently, even Ross believed more than one option could be pursued "to enforce my rights." Pls' App. 28; Pls' First Am. Compl. ¶32. Plaintiffs assume that Defendants' only available course of action was to race to the courthouse and file a lawsuit. Such assumption reads too much into the statement. Had Ross stated something along the lines that Perot's position left Defendants no alternative but to pursue a lawsuit, set forth a specific cause of action, and sought damages or some judicial relief, then the "threat" would have been specific and concrete, and the court would likely reach a different result.

**Memorandum Opinion and Order - Page 11**

Ross's letter does not present an actual controversy between the parties warranting resolution by the court. Reading the letter does not provide certainty that Defendants will sue Plaintiffs; instead, the court must speculate whether a lawsuit might be brought and which causes of action may be pursued. *See Steelplan*, *Ltd.*, 2003 WL 21499303, at *5 (granting summary judgment against a declaratory plaintiff where two demand letters proffered by plaintiff "do not threaten the filing of a civil lawsuit, nor do they make reference to specific civil causes of action," but "simply assert [a] belief" that the other party obtained money by false pretenses). Although there is a hypothetical possibility that a lawsuit will be filed, such possibility is not sufficiently immediate and real to constitute a justiciable controversy. *See Orix Credit Alliance*, *Inc.*, 212 F.3d at 897 (finding no actual controversy where plaintiff sought a declaration that a potential claim contained in a draft motion was barred by *res judicata*, reasoning "we do not believe that *the possibility* that this [draft] motion will be filed is sufficiently immediate and real . . . .") (emphasis added). Whatever dispute exists between the parties, it has not "taken on final shape so that the court can see what legal issues it is deciding," *id.* at 898 (quoting *El Paso Building & Const. Trades Council*, 376 F.2d at 800). The court will not guess the precise legal issues Defendants might raise.

The court in *Orix Credit Alliance*, *Inc.* cited *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 578 (7th Cir. 1994), as an example of a threat of litigation containing the specificity and concreteness capable of establishing an actual controversy. In *NUCOR*, one party sent the other party a notice letter describing an alleged breach of contract and announcing that it would sue under the Texas Deceptive Trade Practices Act within 60 days if the party did not pay the damages it allegedly owed. *See NUCOR*, 28 F.3d at 578. While Ross's letter contains language suggestive of a possible breach of contract, it does not allege such breach. *See* Pls' App. 28. Likewise, Ross's letter does not: (1) explicitly threaten that suit will be filed; (2) provide notice of

**Memorandum Opinion and Order - Page 12**

a potential cause of action; or (3) demand that Hillwood, or any other Plaintiff, pay damages allegedly owed. *See id.*; Pls' First Am. Compl. ¶ 32. If the threat found in the *NUCOR* letter contains the specificity and concreteness the Fifth Circuit requires, the "threat" in this case, which is significantly less than that in *NUCOR*, falls short of the requisite standard.

The court finds the *Intralox* case illustrative and persuasive. In *Intralox*, the court held that a cease and desist letter demanding that a party stop committing false advertising and unfair competition, and alleging violations of federal law, including the Lanham Act, as well as state unfair competition and business tort laws, "did not establish a concrete threat of immediate antitrust litigation," even though the letter stated that failure to cease conduct would force one party "to consider its legal rights and options to seek redress for [the other party's] improper and anti-competitive conduct." *Intralox, L.L.C.*, 2004 WL 1497713, at *2, 4. The court finds Ross's statement that he has "no alternative but to pursue other avenues to enforce my rights," Pls' App. 28; Pls' First Am. Compl. ¶ 32, to be closely analogous to the party's statement in the *Intralox* case that it would "consider its legal rights and options to seek redress." *Intralox, L.L.C.*, 2004 WL 1497713, at * 4. Ross's letter, however, is less "threatening" than the *Intralox* letter because it does not direct a party to stop committing conduct, or allege violations of federal and state law, making it far less likely to provide notice that a lawsuit is imminent.

Although Plaintiffs and Defendants have adverse legal interests concerning the Letter of Intent, so far, they have only engaged in "saber rattling." The court has seen combative language in numerous similar correspondences between different parties to a business deal, and litigation never occurred as a result of the "tough talk." Businesses use such industry talk to gain leverage, revive or reconsider points in a business venture, or call the other side's bluff. When the facts presented show "some saber rattling, but nothing more . . . [t]his is where a court of limited

**Memorandum Opinion and Order - Page 13**

jurisdiction must stop." *Shields*, 289 F.3d at 837. As long as the parties' dispute remains academic, instead of grounded in at least a specific and concrete threat, there is nothing upon which this court may pass judgment, since "[f]ederal courts do not render advisory opinions." *Orix Credit Alliance, Inc.*, 212 F.3d at 898 (quoting *Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325 (5th Cir. 1999)). It is not the function of district courts "to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Brown & Root, Inc.*, 383 F.2d at 666 (citation and quotation omitted).

While Plaintiffs need not wait to be sued before pursuing their declaratory action, and the mere fact that a declaratory action is brought in anticipation of other suits does not require dismissal, *see The Sherwin-Williams Co.*, 343 F.3d at 397, such actions "must still be limited to the resolution of an actual controversy." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (internal citations and quotations omitted). As the court determines that Plaintiffs have not been sufficiently "threatened with liability," their declaratory action is premature, and they are attempting to obtain a declaration before an actual controversy exists. *Cf. Rowan*, 876 F.2d at 28. By filing their declaratory action, Plaintiffs make a preemptive strike to place themselves in the best legal position possible. This tactic, in some instances, is legally permissible, so long as there is an actual controversy, *see The Sherwin-Williams Co.*, 343 F.3d at 397-99; however, no actual controversy exists in this action.

Plaintiffs contend that their declaratory action is ripe because the only remaining questions concern the parties' rights and obligations under the Letter of Intent, which they claim are legal questions for the court to decide. As stated earlier, the dispute, in its present state, is hypothetical and not suited for judicial determination. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (explaining "[r]ipeness is peculiarly a question of timing [aimed] to prevent the

**Memorandum Opinion and Order - Page 14**

courts, through premature adjudication, from entangling themselves in abstract disagreements") (internal quotations and citations omitted). The court is not prepared to assume that Defendants will specifically and concretely threaten litigation, or actually sue, for, among other things, breach of contract. Even if the court had jurisdiction to entertain the merits of Plaintiffs' declaratory action, further factual development would be necessary before the court could seriously contemplate making the declarations Plaintiffs request. *See National Park Hospitality Ass'n. v. Department of the Interior*, 538 U.S. 803, 811 (2003).

The court also expresses concern about timing of this declaratory action. Plaintiffs seek the court to declare, among other things, that "[Plaintiffs have] not breached and [are] not in breach of the Letter." Pls' First Am. Compl. ¶ 39. Declaratory judgment actions "are intended to provide a means of settling an actual controversy *before it ripens* into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowan*, 876 F.2d at 28 (quoting *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989, 990 (5th Cir. 1952)) (emphasis added). Plaintiffs are, at least partially, requesting the court to declare that their past conduct did not breach the Letter of Intent. The "purpose of the Declaratory Judgment Act is not the declaration of non-liability for past conduct . . . ." *United of Omaha Life Ins. Co. v. Region 19 Educ. Serv. Ctr.*, No. 3:02-CV-279-D, 2002 WL 1285204, at *3 (N.D. Tex. June 4, 2002) (Fitzwater, J.); *Great-West Life & Annuity Co. v. Petro Stopping Ctrs, L.P.*, 3:01-CV-1847-G, 2001 WL 1636413, at *5 (N.D. Tex. Dec. 18, 2001) (Fish, J.); *see Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993). Accordingly, assuming the court had jurisdiction over the matter, it would refuse to declare that Plaintiffs' past conduct did not breach the Letter of Intent, as this would be a declaration of non-liability for past conduct. To the extent Plaintiffs request a declaration that they are not presently or continuously

breaching the Letter of Intent, or that their conduct shall not be considered a future breach, Plaintiffs have not established an actual controversy.

Plaintiffs also contend that they will suffer hardship if the court withholds consideration of their declaratory action.[8] The court determines that withholding consideration of Plaintiffs' declaratory action does not present hardship necessitating immediate adjudication, since the hardships Plaintiffs suffer stem primarily from their concern regarding the hypothetical possibility that Defendants may file suit. *See Orix Credit Alliance*, *Inc.*, 212 F.3d at 898 n.10 (explaining insufficient hardship existed where "the only immediate hardship . . . is that [a party] will continue to worry that [the other party] will file another lawsuit . . . ."). Plaintiffs further contend that they were forced to notify creditors about Defendants' claimed interest in the project, which "could and potentially will adversely affect negotiations with future providers of capital" and therefore "significantly hinder the continued development of the Victory Project." Pls' First Am. Compl. ¶¶ 34, 38; Pls' App. 4. These concerns are too remote to establish that Plaintiffs will suffer the described hardship. Defendants have not filed suit, nor have they made a specific and concrete threat that they will. That Plaintiffs worry about a future lawsuit over a dispute which is not an actual controversy, and have acted in anticipation of such possibility, is too slender of a reed to transform the present abstract dispute into an actual controversy ripe for adjudication. *Cf. Orix*

---

[8]Plaintiffs contend that they "will be seriously damaged if the court does not declare that neither party has any rights or obligations under any alleged development agreement," as "any lawsuit or claim brought by [Defendants] could significantly hinder the continued development of the Victory Project." Pls' First Am. Compl. ¶¶ 34, 38; *see* Pls' App. 4. Plaintiffs state that they have been forced to notify creditors, including banks extending them a general line of credit and construction financing, that Defendants claim an interest in the project, and that Defendants' interest "could and potentially will adversely affect negotiations with future providers of capital." Pls' First Am. Compl. ¶ 34; Pls' App. 4. They contend that, were the Letter of Intent binding, Defendants' claimed interest would require the parties to collaborate as development progresses. Pls' First Am. Compl. ¶¶ 34, 38; Pls' App. 4.

**Memorandum Opinion and Order - Page 16**

*Credit Alliance*, *Inc*., 212 F.3d at 898 n.10.  Plaintiffs' position is analogous to that of a person who opens an umbrella when it is not raining or on the verge of raining.

Plaintiffs have not established, by a preponderance of the evidence, the existence of an actual controversy ripe for adjudication.  Because Plaintiffs fail to establish the existence of an actual controversy that is ripe for adjudication, the court ends its analysis at the first step of the three-step inquiry.  Accordingly, the court will not examine whether:  it has the authority to grant declaratory relief; or to exercise its broad discretion to decide or dismiss the action.  *See The Sherwin Williams Co*., 343 F.3d at 387; *Orix Credit Alliance*, *Inc*., 212 F.3d at 895.

V.   **Conclusion**

For the reasons stated herein, Plaintiffs have failed to assert, or establish, facts demonstrating the existence of an actual controversy.  Accordingly, the court **grants** Defendants' Motion to Dismiss Pursuant to [Fed. R. Civ. P.] 12(b)(1) and 28 U.S.C. § 2201, as it lacks subject matter jurisdiction over Plaintiffs' declaratory action.  Because the court lacks subject matter jurisdiction over the declaratory action, the court **declines to address** Defendants' Motion to Dismiss Pursuant

to Fed. R. Civ. P. 12(b)(6).  Accordingly, the court **dismisses** this action **without prejudice** for a lack of subject matter jurisdiction.[9]

**It is so ordered** this 28th day of April, 2006.

                                      Sam A. Lindsay
                                      United States District Judge

---

[9]**The court apologizes for the delay in deciding this motion.  This case has been under seal.  Cases under seal do not fall within the court's normal tracking system and do not appear on reports that apprise the court of the age of a motion or case.  The court will allow what has been previously filed in this case to remain sealed; however, this opinion will not be filed under seal, and any future document that the parties desire to have placed under seal must be accompanied by a motion requesting that it be filed under seal.**

**Memorandum Opinion and Order - Page 18**